IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LUCENT TECHNOLOGIES, INC.,

Plaintiff,

v.

EXTREME NETWORKS, INC.,

Defendant.

Civil Action No. 03-508-JJF

---

Josy W. Ingersoll, Esquire and John W. Shaw, Esquire of YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware.
Of Counsel: John M. Desmarais, Esquire; Robert A. Appleby, Esquire and James E. Marina, Esquire of KIRKLAND & ELLIS LLP, New York, New York.
Attorneys for Lucent Technologies, Inc.

Karen Jacobs Louden, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware.
Of Counsel: Terrence P. McMahon, Esquire; Vera M. Elson, Esquire and Behrooz Shariati, Esquire of McDERMOTT WILL & EMERY, Palo Alto, California.
Raphael V. Lupo, Esquire of McDERMOTT WILL & EMERY, Washington, D.C.
Daniel R. Foster, Esquire of MCDERMOTT WILL & EMERY, Irvine, California.
Attorneys for Extreme Networks, Inc.

---

**MEMORANDUM OPINION**

August 16, 2005
Wilmington, Delaware

Joseph J. Farnan Jr.

**Farnan, District Judge.**

Pending before the Court is a Motion For Judgment As A Matter Of Law Under Fed. R. Civ. P. 50(b) Of No Infringement And No Damages Regarding Claim 10 Of U.S. Patent No. 4,769,811 (D.I. 740) filed by Extreme Networks, Inc. ("Extreme") and a Motion For Judgment As A Matter Of Law Or, In The Alternative, A New Trial (D.I. 742) filed by Lucent Technologies, Inc. ("Lucent"). For the reasons discussed, the Court will grant Lucent's Motion For A New Trial and deny as moot Lucent's Motion For Judgment As A Matter Of Law and Extreme's Motion For Judgment As A Matter Of Law.

## I. Background

Lucent filed this action against Extreme alleging willful infringement of Lucent's data-networking patents, including U.S. Patent Nos. 4,769,810 (the "'810 patent"), 4,769,811 (the "'811 patent"), 4,914,650 (the "'650 patent") and 4,922,486 (the "'486 patent"). A six day jury trial was held from April 27, 2005 through May 5, 2005, on the issues of infringement, willfulness and damages.

On May 9, 2005, the jury returned a verdict of direct infringement of the '811 patent in favor of Lucent and against Extreme. The jury returned verdicts of non-infringement in favor of Extreme and against Lucent as to the remaining patents, and also found in favor of Extreme on the issue of inducement of

infringement of all the patents-in-suit, including the '811 patent. Following the jury's verdict, Lucent moved for judgment as a matter of law and a new trial. Extreme also filed a motion for judgment as a matter of law regarding the jury's verdict that it directly infringed the '811 patent.

**II. Standard For The Grant Of A New Trial**

In pertinent part, Federal Rule of Civil Procedure 59(a) provides:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

Fed. R. Civ. P. 59(a). Among the most common reasons for granting a new trial are the following: (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly discovered evidence exists that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent. Zarow-Smith v. New Jersey Transit Rail Operations, 953 F. Supp. 581, 584 (D.N.J. 1997) (citations omitted). The decision to grant or deny a new trial is committed to the sound discretion of the district court. Allied Chemical Corp. v. Darflon, Inc., 449 U.S. 33, 36 (1980); Olefins Trading, Inc. v. Han Yang Chem Corp., 9 F.3d 282 (1993) (reviewing district

court's grant or denial of new trial motion under deferential "abuse of discretion" standard).

**III. DISCUSSION**

Reviewing the parties' arguments in light of the applicable law and the context of the trial held in this case, the Court concludes that Lucent is entitled to a new trial based on improper conduct by counsel for Extreme. Specifically, the Court concludes that counsel for Extreme crossed the line in introducing evidence concerning the past relationship between Lucent and Extreme which the Court concluded was not admissible during the infringement and damages phase of the trial.

In its Trial Management Order, the Court trifurcated the proceedings in this case, ordering one jury trial on the issues of infringement, damages and willfulness, a second trial before the same jury on invalidity, and a third trial without a jury on the issues raised by the state law claims and defenses. (D.I. 650). Consistent with this Order, the Court repeatedly ruled at trial that Extreme was precluded from presenting evidence related to Extreme's counterclaims and affirmative defenses, including evidence of prior business dealings between Lucent and Extreme. Despite the Court's Trial Management Order and its rulings at trial, counsel for Extreme pursued a path set on presenting this evidence to the jury. During voir dire, Extreme's counsel alleged that Extreme put the accused features into its product

because Lucent asked for those features. Counsel for Extreme stated:

> Well, that was five years after Lucent first asked Extreme to put some of the features in the part that Lucent wanted in. So it's those very features that you are going to hear about that Lucent accuses Extreme of infringement. <u>They asked for them. They were put in there. Five years later, Lucent sues.</u>

(Trial Tr. 15-16) (emphasis added). After "testing the waters" during voir dire, Extreme proceeded to "jump in" to this line of defense with its Opening Statement:

> What you're going to find out about, ladies and gentlemen, is that during 1997, there was meeting after meeting. <u>Lucent actually said, Give us your roadmap. Give us your plans. Show us everything you've got.</u> We want to know how the signals work.
>
> We want to know everything. And they go, we don't want to tell you everything, no, no, we'll enter into an agreement where, an NDA, a nondisclosure agreement because we would like to be your partner. Okay? Because if we can land that one, that's a big fish, if we go say, you know $26.3 billion Lucent if they're buying out stuff, this is great, so what they thought they were getting into was Lucent was going to say to Extreme you make our products for us, we'll slap our name on it, because we can't make it, we got nothing going, sure we have $26 billion in revenues coming in the door, we're not spending a quarter of it on gigabyte ethernet, so we need you guys, we'll put our name on the boxes and buy them, what could be better for a new company. <u>So they told them everything. They educated them on what they had.</u>
>
> * * *
>
> <u>So Lucent says--actually all the features that we're going to be talking about in this case, did they say we infringe, they asked us to put it in. They requested that they do it.</u>
>
> * * *

> In 1997 when Lucent actually got some Summit machines, these switches, Extreme shipped them over to them. You want them, okay. And they had their engineers take them apart.
>
> In fact, some of our engineers were over at Lucent in 1998 and Lucent had an entire room full of our equipment. We had only given them two units, they had a whole room. They had been looking at these things and taking them all apart. They knew everything we did in 1997 and how we did it, and worse yet, they've told us to put the features you're going to hear about in our boxes.
>
> * * *
>
> In 2000, they came back to us again and said look, we would like you to put our networks in our facilities. They ended up hiring, getting in a contract with Extreme to put Extreme products in their headquarters, this is in Lucent headquarters in Murray Hill in New Jersey. This started in the year 2000.
>
> They -- analyzed, believe me, Lucent knows how to analyze, sure they got smart engineers there, they didn't figure out the gigabyte ethernet thing, or Prominet either, they can figure things out. They had our equipment there, they knew exactly what we did, they had more meetings with us, and they asked us again, put in the features, the very features they say now infringe, put in there and now they're suing us.

(Trial Tr. 60-61, 62-63, 66-67) (emphasis added). Lucent objected to Extreme's Opening Statement, and the Court instructed Extreme that, in accordance with the Court's Trial Management Order, Extreme was not permitted to raise these counterclaim and affirmative defense related issues during the infringement/damages trial.

Despite the Court's admonishment and its reiteration of its ruling throughout the trial, Extreme persisted in its course of

conduct, making the same arguments to justify its actions that it makes here in opposition to Lucent's motion for a new trial, i.e. that Extreme believed the evidence was relevant and that Lucent opened the door to this issue. The Court rejected Extreme's arguments multiple times at trial and rejects them again here. (Trial Tr. 1204-1205). Indeed, the Court warned Extreme that it would face a new trial if it continued with this strategy, and Extreme continued, at its own peril, closing its case with the following remarks:

> Lucent didn't disclose its patents to us. It was talking to us from 1997 on, we know that.
>
> It had our products and was looking at them under a microscope from 2001 on, never mentioned the patents, never mentioned there was an issue.
>
> <u>They wanted features in there that weren't in there before.</u> Extreme did not know of the patents.
>
> * * *
>
> <u>It wasn't like Extreme was hiding in the weeds somewhere. In fact, the opposite is true. Lucent was laying in the weeds.</u>
>
> <u>If they really thought they had a case, ladies and gentlemen, when they started scrutinizing our products as early as the year 2000, right, they would have said something.</u>
>
> There were products in the lab. They chose us. If they thought they had a case, these guys aren't stupid.
>
> They've got some good engineers there. You know, you pop the top, you see how it works.
>
> <u>They're talking to our engineers. We were letting them find out anything they wanted to find out.</u>

(Trial Tr. 1920, 1922-1923) (emphasis added).

The record in this case is clear, counsel for Extreme was forewarned that the consequence of counsel's failure to adhere to the Court's rulings would be a new trial. Thus, the Court concludes that counsel's repeated violations of the Court's evidentiary rulings had the result of unfairly influencing and prejudicing the jury against Lucent. Accordingly, the Court concludes that a new trial is warranted in this case.

## IV. CONCLUSION

For the reasons discussed, the Court will grant Lucent's Motion For A New Trial and deny as moot Lucent's Motion For Judgment As A Matter Of Law and Extreme's Motion For Judgment As A Matter Of Law.

An appropriate Order will be entered.