IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| LUCENT TECHNOLOGIES, INC. | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 03-508-JJF |
| EXTREME NETWORKS, INC., | : | |
| Defendant. | : | |

Josy W. Ingersoll, Esquire and John W. Shaw, Esquire of YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware.
<u>Of Counsel</u>: John M. Desmarais, Esquire; Robert A. Appleby, Esquire and James E. Marina, Esquire of KIRKLAND & ELLIS LLP, New York, New York.
Attorneys for Lucent Technologies, Inc.

Karen Jacobs Louden, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware.
<u>Of Counsel</u>: Terrence P. McMahon, Esquire; Vera M. Elson, Esquire and Behrooz Shariati, Esquire of McDERMOTT WILL & EMERY, Palo Alto, California.
Raphael V. Lupo, Esquire of McDERMOTT WILL & EMERY, Washington, D.C.
Daniel R. Foster, Esquire of MCDERMOTT WILL & EMERY, Irvine, California.
Attorneys for Extreme Networks, Inc.

**<u>MEMORANDUM OPINION</u>**

November 3, 2005
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is a Motion For Reconsideration Under D. Del. L.R. 7.1.5 Of The Court's Order Granting Lucent A New Trial (D.I. 764) filed by Extreme Networks, Inc. ("Extreme"). For the reasons discussed, the Court will deny Extreme's Motion For Reconsideration.

I.   PARTIES' CONTENTIONS

By its Motion, Extreme requests the Court to reconsider its Memorandum Opinion and Order dated August 16, 2005, granting Lucent Technologies, Inc. ("Lucent") a new trial. Extreme contends that its counsel did not violate any order of the Court when referencing the pre-existing relationship between Lucent and Extreme. Extreme contends that it refrained from presenting significant portions of testimony and a number of exhibits to avoid violating the Court's order. Extreme contends that it did not "cross the line" set by the Court's ruling precluding the introduction of evidence related to the parties' pre-existing relationship, and only introduced very limited evidence on this topic to respond to specific charges of copying made by Lucent and specific jury instruction adopted by the Court. Extreme further contends that it was not "reasonably probable" that any passing references it made to the parties' pre-existing relationship impacted the jury given the length of the jury's deliberations, their request for certain exhibits and their

1

decision to return a verdict based on infringement, not willfulness. Extreme also contends that, in any event, Lucent did not object to Extreme's opening and closing statements, and therefore, Lucent cannot challenge those statements post-trial.

In response, Lucent contends that Extreme has not advanced any grounds justifying reconsideration and restates the arguments it already made in opposition to Lucent's motion for a new trial. Lucent contends that Extreme violated multiple rulings of the Court prohibiting Extreme from introducing evidence and argument related to Extreme's state law counterclaims and defenses. Lucent contends that it repeatedly objected to Extreme's comments and that it was reasonably probable that the jury was prejudiced by the comments of Extreme's counsel given the inflammatory nature of the comments pertaining to Lucent's alleged misconduct.

## II. DISCUSSION

The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). The purpose of the motion for reconsideration is not to "rehash arguments already briefed." Dentsply Int'l. Inc. v. Kerr Mfg. Co., 42 F. Supp.2d 385, 419 (D. Del. 1999). In order to succeed, the party requesting reconsideration must show that at least one

2

of the following criteria applies: (1) a change in the controlling law; (2) availability of new evidence not available when the Court made its decision; or (3) need to correct a clear error of law or fact or to prevent manifest injustice. <u>Max's Seafood Café by Lou-Ann, Inc. v. Quinteros</u>, 176 F.3d at 677). "As a general rule, motions for reconsideration should be granted 'sparingly.'" <u>Karr v. Castle</u>, 768 F. Supp. 1087, 1090 (D. Del. 1991).

Reviewing Extreme's arguments in light of the applicable legal standard, the Court concludes that reconsideration of the Court's decision granting Lucent's motion for a new trial is not warranted. At trial, the Court reiterated its ruling concerning the exclusion of evidence related to the parties' past business dealings over five times. Extreme contends that the Court never actually found at trial that Extreme "crossed the line" and violated the Court's orders. The record suggests otherwise, but in any event, the Court made it clear to the parties that this issue would be considered post-trial and that the remedy would be a new trial.[1]

Extreme suggests that the Court made its decision to grant a new trial based solely on the remark made by counsel in its closing statement. (D.I. 765 at 11). Extreme's assertion is incorrect. As the Court explained in its Memorandum Opinion granting Lucent's request for a new trial, it is the conduct of

3

Extreme's counsel as a whole throughout the trial that justifies the Court's order allowing a new trial, and not just a single statement made by counsel in his closing.[2]

Extreme also points to the conduct of Lucent's counsel as a means to excuse its own; however, the Court must necessarily consider the conduct of counsel for the verdict winner in determining whether the jury was improperly influenced in that party's favor. Lucent's counsel objected throughout the trial to testimony it believed violated the Court's rulings. (Trial Tr. 422, 927-928, 1202-1211, 1330-1335). The Court held lengthy in-camera and side-bar conferences with the parties, contemporaneously sustaining some of these objections and reserving decision on others for consideration post-trial. The Court need not recite all the instances of misconduct, but notes that counsel for Extreme elicited testimony which the Court ruled should be excluded during the appearance of Mr. Kramer and Mr. Toro, during the deposition of Mr. Bruno, as well as during the closing statement by Extreme's counsel. These repeated violations of the Court's evidentiary rulings occurred despite the Court reiterating its rulings multiple times.[3] Because of the subject matter of the excluded testimony and the repeated violations of the Court's rulings, the Court concludes it is reasonably probable that the jury was unfairly influenced against Lucent, and therefore, the Court concludes that a new trial is

4

the proper remedy.

With respect to the instant Motion, Extreme has presented no new issues or arguments justifying reconsideration. Extreme has merely reiterated arguments that the Court has previously considered. Accordingly, the Court concludes that reconsideration of the Court's August 16, 2005 Order is not warranted.

### III. CONCLUSION

For the reasons discussed, the Court will deny Extreme's Motion For Reconsideration Under D. Del. L.R. 7.1.5 Of The Court's Order Granting Lucent A New Trial.

An appropriate Order will be entered.

END NOTES

1. At a lengthy side bar, the Court discussed one of the objections lodged by counsel for Lucent. The Court expressed its agreement with counsel for Lucent that counsel for Extreme was violating the Court's orders, indicated to the parties that the matter would be considered more fully post-trial, and forewarned Extreme that if the Court determined that Extreme's conduct violated the Court's orders, the remedy for its transgressions would be a new trial. In pertinent part, the Court had the following exchange with counsel:

> MR. DESMARAIS: I'm getting killed up here.
>
> THE COURT: . . . I'm going to tell you something, **I'm not convinced Mr. Desmarias is wrong, that Extreme keeps leverage against the bar order. But what I'm going to do is I've heard your arguments, I think you are trying to invade to demonstrate what Mr. Desmarias has alleged. If you do it and even if you're successful with the verdict, you know what happens?**
>
> MR. DESMARIAS: I don't want to try the case again, Your Honor.
>
> THE COURT: **You get a new trial.**
>
> Mr. DESMARIAS: I don't want to try the case again. You have ruled three times.
>
> THE COURT: I have ruled three times. If they continue, it's like the redirect of Mr. --
>
> MR. DESMARIAS: Mr. Schneider.
>
> THE COURT: Mr. Schneider, you know, that was -- if I had a football referee's flag, I would have had to throw it in the middle. **But I forewarn people that you run the risk, and I have done it, and I'll do it again.** I know nobody wants to retry the case, you've spent a lot of money, but you know the rulings.
> **It sounds like to me that you continue to creep on them. And just make a post-trial motion.**
>
> I mean, you have made your point, **I partially agree with you, and of course, if you get a verdict that's adverse to you, then you make a motion. . . .**

6

\* \* \*

MR. McMAHON: We're trying to be careful here. I'm being very careful.

THE COURT: But, you know, it's --you know, I respect lawyer's judgments. **[Mr.] Desmarais keeps complaining, I'm sort of agreeing with him because I don't want to foreclose my ability to make a post-trial ruling. I have told everybody that, I have announced the rulings I think more than three times.**

MR. DESMARAIS: I think so.

THE COURT: And now it's lawyer judgment how far you want to push the envelope. **Everybody knows what the penalty is** and there is no appeal from that penalty. Even if you're successful if you push the envelope and there is a new trial ordered, you got to go through the new trial. That's the bad news about this stuff.

MR. McMAHON: Okay.

THE COURT: You know, **I guess I can't get into that finger waving if you do this again because I think you're violating my orders, I have said what I can say without foreclosing what I may have to do in the future. . . .**

\* \* \*

MR. DESMARAIS: **But it's irrelevant for these issues.**

THE COURT: **I agree with you**, but what am I going to do, send Mr. McMahon at lunchtime down to the marshal's office, have baloney and cheese?

\* \* \*

MR. DESMARAIS: He says he's hearing it, but he's not listening.

THE COURT: I understand. And I know your client doesn't want to spend money retrying the case, **but if you got an adverse verdict and you had a righteous position, sometimes you got to do that.**

7

But there is not much a trial judge can do unless you want me to be a screamer. Do you want me to be a screamer?

MR. McMAHON: No, Your Honor.

THE COURT: I know how to do that.

MR. McMAHON: I bet you can.

THE COURT: We used to have that here, and I would sit down and say why is that happening, there is all sorts of remedies later on. But I could wag my finger and say whomever is up there, you know, make you feel badly in front of the jury and all.

You have made your application, **I agree with you in substantive potions of your objection. I have again warned the defendants . . . .**

* * *

MR. MCMAHON: . . . I don't want to disobey your orders, Judge. I respect you, I respect your orders. I got my case to put on, they have got willfulness, they have got damages, inducing, and I think it's admissible.

THE COURT: You sound like my five kids, "Dad I don't wan to disrespect what you said." I say, "Good. Stay home with me this weekend, we'll talk more about it."

Again, I don't think you do it disrespectfully, you're trying to drive your case to the line fairly, but you know, **I think there is a lot indicators that you're getting white paint on your shoes because you're stepping on the line and [Mr.] Desmarias thinks you're falling over it.**

MR. MCMAHON: Yeah.

THE COURT: But you're caught up in a trial. **I have given my rulings a couple of times, five, six times. I know what you want to get in, it just isn't in this part of the case. I got to go back to claims products, coverage, end the case and I'll never try damages.**

8

(Tr. 1202-1211) (emphasis added).

2. In its August 16 Memorandum Opinion, the Court chronicled the conduct of Extreme's counsel throughout the trial and concluded that "counsel's repeated violations of the Court's evidentiary rulings had the result of unfairly influencing and prejudicing the jury against Lucent." (D.I. 760 at 7). Thus, it is evident that the Court did not ground its decision on a single statement made in closing as Extreme contends in its current Motion.

3. By way of another example, the Court had the following dialogue with counsel in response to Lucent's objection to certain witnesses and exhibits related to the parties' past business dealings:

> THE COURT: But you know the question, **I already ruled it out.**
>
> MR. MCMAHON: Judge, but you also said --
>
> THE COURT: What you're saying is they have opened the door.
>
> MR. MCMAHON: Absolutely with what you said.
>
> THE COURT: **It's out until the next part of the trial.**
>
> MR. MCMAHON: Judge, it's -- he said it's the relationship between the parties and the importance of these very features and they asked that the features be put in the RFP that was built out after they sent -- it was after the letter, the 20th. You said if it was after the letter, it was admissible.
>
> THE COURT: **It's out.**
>
> MR. MCMAHON: Judge, you're really tying my hands here.
>
> THE COURT: It's sort of like objecting to one of the questions as argumentative -- the answers, to one of the answers as argumentative. It's argumentative. **You're going to get a chance to put that on in a later phase. But you can't keep trying to inch away from rules that are made.** There are sometimes circumstances that require by fairness an opening up to some extent, **but that evidence isn't in this portion of the trial.**

9

>     MR. MCMAHON:  Judge, but let's just take it on a case-by-case basis because we have to be able to respond to Mr. Hoeberlein.
>
>     THE COURT:  **You knew what his testimony was going to be.**
>
>     MR. MCMAHON:  That's why we had this evidence available.
>
>     THE COURT:  **I knew what it was going to be when I made my ruling.  So it's out and you'll get a chance to put those witnesses on later.**

(Trial Tr. 927-928) (emphasis added).